**KAROBI LUMBER COMPANY, Libelant,**

v.

**The S.S. NORCO, etc., Respondent.**

**Dods Shipping Limited of Nassau, N.P., Claimant.**

**No. 3055.**

United States District Court
S. D. Alabama, S. D.

Jan. 5, 1966.

John H. Tappan, Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., for libelant.

Alexander F. Lankford, III, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., for claimant.

DANIEL HOLCOMBE THOMAS, District Judge.

This libel in rem is brought by the Karobi Lumber Company against the SS NORCO. On October 31, 1963 the NORCO sailed from San Lorenzo, Ecuador to Mobile, Alabama with a cargo of grade one veneer logs, shipped by the libelant under a bill of lading. The NORCO'S voyage was delayed by boiler trouble and did not reach Mobile until February 17, 1964. The condition of the logs upon arrival was such that they were no longer fit for their intended purpose.

Before considering the issue of liability of the vessel for the damages sustained by Karobi Lumber Company, the question of enforceability of an in rem judgment must be first disposed of.

The SS NORCO was owned by Dods Shipping Company and one Tibbetts was bareboat charterer thereof. In the charter party there appears the following clause:

"13. Neither the Charterer nor the Master of the vessel shall have any right, power, or authority to create, incur, or permit to be imposed upon the vessel any liens whatsoever except for crew's wages and salvage."

The respondent contends that this clause prevents the attachment of any lien against the NORCO for damages to the cargo. The Carriage of Goods By Sea Act (Cogsa) Title 46, Secs. 1300–1315 U.S.C. covers the shipment of goods by sea under bills of lading or similar documents of title. Title 46, Sec. 1305 U.S.C. provides

"The provisions of this chapter shall not be applicable to charter parties; but if bills of lading are issued in the case of a ship under a charter party, they shall comply with the terms of this chapter."

Title 46, Sec. 1303(8) U.S.C. provides that there can be no agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to goods due to negligence or fault. Title 46, Sec. 1301(b) U.S.C. defines "contract of carriage" as relating to those transactions covered by a bill of lading or similar document of title. This definition includes such transactions covered by a bill of lading under or pursuant to a charter party.

The question of whether a lien prohibition clause in a charter party agreement can defeat the shipper's maritime lien is considered in United States v. S. S. Lucie Schulte, 343 F.2d 897 (2d Cir. 1965), reversing 227 F.Supp. 583 (S.D.N.Y.1964). In that case the charterer made overcharges against the shipper. After payment of these charges the shipper sought to attach a lien to the vessel for the amount of the overpayment. The charter party contained a lien prohibition clause. The court finding that the shipper had sufficient notice of the existence of the charter party, enforced the lien prohibition clause. While noting that the libelant contended that the clause was solely for protection against materialmen's liens, the court refused such narrow construction and held that the clause prohibited attachment of any liens. There was no legislative enactment to which the court could turn for protection of the shipper as the specific section of Cogsa which renders such clauses void deals only with contractual

exemptions from liability for negligence. The nature of the injury in United States v. S. S. Lucie Schulte, supra, (overpayment of freight charges), readily distinguishes that case from this case. The injury complained of herein is based upon an allegation of breach of duty to provide a seaworthy ship.

Since bills of lading issued pursuant to a charter party must conform to Cogsa, a bill of lading cannot be subject to an agreement which violates Cogsa. The lien prohibition clause contained in the charter party agreement is unenforceable insofar as it attempts to insulate the vessel from liability for negligence in an action brought by a shipper who has a bill of lading. Cogsa expressly prohibits such exemptions from liability in a contract of carriage. 46 U.S.C. Sec. 1303(8). The fact that the exemption from liability does not expressly appear on the face of the bill of lading does not bring the clause from the charter party beyond the scope of Cogsa. The bill of lading was issued subject to the charter party and the protective measures guaranteed by Cogsa cannot be defeated by resort to extraneous agreements. It cannot be said that a bill of lading complies with the terms of Cogsa when issued under a charter party if the bill of lading cannot guarantee the in rem liability of the vessel. See Gilmore and Black, Admiralty (1957) Sec. 4–24, p. 219.

Respondent contends that Compagnie De Navigation Fraissinet & Cyprien Fabre, SA v. Mondial United Corp., 316 F.2d 163 (5th Cir. 1963) governs. The general rule that a charter party can expressly restrict liability of the vessel is stated therein. This statement must be qualified by the fact that such exemptions are permissible only so long as not rendered void by statute.

Therefore, even in view of the fact that the shipper, Karobi Lumber Company had reason to know of the existence of a charter party, the lien prohibition clause contained therein is unenforceable by 46 U.S.C. Sec. 1303(8).

Turning from the issue of enforceability of judgment to liability, the court finds as follows. On the date of departure from San Lorenzo, Ecuador, the SS NORCO was operating under power of one of its two boilers. Leaving the port with only one functioning boiler was such failure of duty as to make the ship unseaworthy at the beginning of the voyage. This violates 46 U.S.C. Sec. 1303(1) (a) and therefore there is liability for the damage to the cargo which occurred as a result of the unseaworthy condition of the ship. Upon due proof to the court that the cargo was in good condition at the time of loading and damaged upon arrival, the shipper established a *prima facie* case and shifted the burden of proof. It then must be proven that the cause of such damage was one excepted under Cogsa or that due diligence was exercised to prevent the harm. M. W. Zack Metal Co. v. S. S. Birmingham City, 311 F.2d 334 (2d Cir. 1962); Daido Line v. Thomas P. Gonzalez Corp., 299 F.2d 669 (9th Cir. 1962). The court thus finds that the vessel has not sustained this burden of proof and that the respondent is liable for the damages sustained.